May it please the court, my name is Maya Ingram, appearing from the UCLA School of Law, Ninth Circuit Appellate Clinic, and my co-counsel is Jessica Stebbins from O'Melveny and Myers. We are appearing pro bono on behalf of the appellant, Bruce Patrick Haney. I will be discussing the RAND issue for four minutes, and my colleague will spend the remaining time discussing the other issues. We'd like to reserve one minute for rebuttal time. Summary judgment should be reversed because the district court issued Haney an insufficient RAND notice. RAND is a critical procedural safeguard imposed by this court to ensure that pro se prisoner litigants who lack legal training receive fair notice of the complexities of the summary judgment rule. This notice ensures that the prisoner's claims are forcefully litigated and judged on the merits, not dismissed for procedural technicalities. Since this court presumes that prejudice flows from a deficient RAND notice, harmless error analysis is not applied. Consequently, each of the following deficiencies in Haney's RAND notice constitutes reversible error. First, the notice failed to inform Haney that Local Rule 260B imposed additional summary judgment requirements. Without notice of this rule, Haney failed to submit a separate statement admitting or denying each of the facts in Nelson and Saldana's Statement of Undisputed Facts. Second, the notice failed to use clear language that declarations must be signed under penalty of perjury. Because the notice stated only that declarations must be signed, Haney signed his declarations, but they were dismissed by the magistrate judge for failure to be signed under penalty of perjury and not considered when deciding summary judgment. Did the first problem end up being a problem for Haney? It did. The court referenced his failure to comply with the Local Rule and, because of this failure, used Nelson and Saldana's Statement of Undisputed Facts, except were directly contradicted by his verified complaint. His lack of notice of this Local Rule failed to allow him to set up a point-by-point comparison of how his evidence weighed against Nelson and Saldana's evidence. When deciding summary judgment, the magistrate judge missed key facts in Haney's favor that was not part of her analysis when recommending that summary judgment be granted against him. This court has repeatedly held that harmless error analysis should not be applied to deficient written notice. The prejudice is presumed because the court cannot decide and understand all the ways both the substance of the record and the merits of the case the prisoner presented to the court were impacted by this lack of procedural knowledge. This court has repeatedly reversed summary judgment when a deficient written notice has been issued because Haney's written notice clearly lacked two of the key requirements this court requires in Rand. Summary judgment should be reversed here. If there are no further questions, I will yield my remaining time to my colleague. All right. Thank you. Thank you. May it please the Court. Your Honors. For the past nine years, Mr. Haney has been just looking to get a fair day in court. And as my colleague just pointed out, he was not apprised of the key requirements of summary judgment. In addition, he spent two years pursuing discovery from defendants. And having just won his motion to compel, the district court then stated and dismissed his case without allowing him to take any of the discovery it had already found was relevant and important to his case. Moreover, the district court, probably in part because there was no separate statement of material fact highlighting Haney's favorable evidence, missed key facts in the record in Haney's favor. Specifically, Your Honors, the bulk of the district court's decision in favor of Officer Saldana was that she followed dental staff's instructions regarding Haney's care and that she deferred to dental staff regarding those instructions. But Haney testified to something different. Officer Saldana testified that dental staff only told her they would not see Haney at that time. But Haney testified in the record at ER 355 and 366 that Agent Saldana came back and told him he could not see a dentist the entire time he was in administrative segregation. That was three and a half more weeks. And this was not a mere toothache. The undisputed evidence is that Haney couldn't eat, couldn't drink water, couldn't sleep. His face was, excuse me, Your Honors, visibly swollen, and there was blood on his pillow each morning. And that's not just in Haney's testimony. That's in the dentist's records of examining Haney when he finally, after three and a half weeks, was able to see a dentist. Counsel, there originally was a claim here for injunctive relief. Is that particular claim moot since he is no longer in that unit? Your Honors, I believe on the record presented we don't have the evidence to show that this is a systematic harm or would otherwise meet the capable repetition of a debating review, so we've ceded mootness argument. Okay. But that brings me to a different point. Let me go back to the record. Sergeant Nelson, Haney's evidence presented evidence that he submitted two grievances to Officer Nelson, Sergeant Nelson. Sergeant Nelson's declaration did not address either grievance. This court held in Jet v. Penner that at summary judgment, when we have to infer evidence in favor of a non-moving party, we must infer that a grievance addressed to a party was received. Nelson's failure to address what happened to Haney's grievances and Saldana's contradictory evidence as to what she told Haney regarding his treatment are sufficient at the summary judgment stage to create an inference of deliberate indifference. Now, it's true that Haney didn't have the greatest record in the world, but that was due to the fact that despite his diligent pursuit of discovery for two years, he wasn't allowed to take critical discovery in his case. Saldana's evidence and Nelson's evidence is that they followed prison policies, but they didn't submit those policies. They only submitted their own testimony. Haney testified, and he submitted a declaration from another prisoner, that there were different policies in place. He was told by other persons that Officer Saldana did have authority to escort him to the clinic. Now, that was hearsay evidence, so Haney sought the names of the persons in the unit so he could ask them about the actual policies and obtain admissible evidence that the policies were different. Haney also sought the actual policies themselves, so he could compare Nelson and Saldana's versions of their own conduct, which are put in question in part by the statements of Dr. Anderson, who said that dental staff, not officers, are supposed to screen prison inmates. But he didn't get those policies either. He also sought Officer Saldana's history, and counsel for the government said, well, what does that matter? It matters a lot when the only evidence in her favor is her own declaration. If she has a history of similar grievances and similar complaints, that casts doubt on her credibility and the weight of her evidence accordingly. This court's precedent is clear in a number of areas. First, in Garrett v. City and County of San Francisco, and in Clark v. Capital Credit, this court has held unequivocally that it is reversible error to dismiss a case on summary judgment while a motion to compel further discovery is pending. And that is what happened here, essentially. It's actually worse. The motion to compel was granted and then put back in pending status. But he never got the evidence that he requested, and the court didn't rule in evaluating summary judgment on the merits of that evidence. And then, as soon as the magistrate judge recommended summary judgment against Haney, he said, wait, I haven't got any discovery. He raised the issue in detail in his objections to the magistrate judge's ruling. And then the district court dismissed it as untimely. Again, Your Honor, that's not consistent with this court's jurisprudence in Brown v. Roe, nor is it consistent with the general principle that cases are to be cited on their merits and that pro se prisoner's petitions should be treated liberally. At the end of the day, Haney's case was not treated liberally at all. The evidence he submitted was dismissed or disregarded because he failed to comply with a procedural rule he was never informed of. Despite trying, following all the rules for two years to get admissible evidence to support his claim, he was never even given the opportunity to take that evidence. And then the evidence that he actually had in the record was ignored and the district court adopted Nelson and Saldana's testimony as the undisputed fact. Your Honor, I submit that in this case it's quite clear that reversal is required and Haney is entitled to his day in court. But to go back to the Rand statement for a while, because it's relevant to what you're saying, I don't see what's confusing or why it wasn't adequate with regard to the fact that he needed to submit information under penalty of perjury. I understand that he didn't say that he needed a separate statement of undisputed facts, but it's not so clear to me that that really mattered. It did matter that he didn't have facts stated under penalty of perjury, but the statement says that he has to submit affidavits or declarations setting aside the facts and then it says that an affidavit has to be under penalty of perjury. It has to be confirmed by ultimate affirmation and an unsworn declaration has the same effect provided stated and signed under penalty of perjury. So what's the problem? Your Honor, the problem is the body of the Rand notice itself says statements must be signed. Unsigned statements will not be considered. That's what it says. It says a declaration must... But it says it has to be an affidavit or a declaration and then it explains what's an affidavit and a declaration. Your Honor, it doesn't explain what's an affidavit or a declaration. That footnote makes sense to me and it makes sense to you, but to a pro se prisoner the statement that an affidavit is the same, that a declaration signed under penalty of perjury is the same thing as an affidavit is meaningless. They're going to look to the body that says a declaration has to be signed. This footnote doesn't resolve the issue. In a sense the district court created this error by putting in the body of the Rand notice declarations must be signed, unsigned declarations will not be considered. That's the only place where they clearly told Haney what would be considered and what would not be considered. The footnote then says they have the same legal effect if they're signed under penalty of perjury as an affidavit, but nowhere does it actually say that a declaration has no effect if it's not under penalty of perjury. Instead it says unsigned declarations will not be considered. And the district court could have simply bounced Haney's declaration and said sign it under penalty of perjury. It didn't do that. Instead it chose to treat this as a substantive error and disregarded two declarations in Haney's favor. Your Honor, this court has held in Wyatt, I believe, and in other cases cited in our briefs, that where a Rand notice creates an ambiguity, it's up to the district court to then correct that ambiguity. Here the Rand notice absolutely created an ambiguity when it said declarations must be signed, unsigned declarations will not be considered. Haney signed his declaration. He had no way to know from the face of that Rand notice that a signed declaration would not be considered. Okay. Do you others have any further questions? Thank you. Thank you very much. Good morning, and may it please the court, Deputy Attorney General Kenneth Roost for defendants' appellees Saldana and Nelson. They were not deliberately indifferent to Haney's toothache because when he alerted them of it, they advised dental staff and deferred to dental staff's decision not to schedule an emergency appointment at that time. They behaved reasonably in relying on the dental staff and going through addressing the arguments in turn. Fair notice was clearly provided here. Concerning the declaration issue, this court in Rand attached at Appendix A a model fair notice which provided far less detail than the notice provided by the district court here. It provided ample notice that a declaration is signed under the penalty of perjury. Counsel, I'm more concerned about the handling of the request for discovery. I'm speaking, of course, only for myself on that question. It does seem that the court not only held the plaintiff to a lot of technical requirements, notwithstanding that he was pro se, but also I don't fully understand why it wasn't an abusive discretion not to permit the discovery to go forward. Your Honor, the procedural history illuminates the answer to that question. Haney plainly, deliberately waived a Rule 56F motion. The court delivered very fair and clear notice that Does a pro se litigant even know what that sentence means? Haney actually did in this case, as the record illustrates, page 151 of the excerpts of the record. He gets a required Rand notice. Absolutely, Your Honor. The Rand notice was undisputedly clear. The plaintiff does not argue that he was advised at the time that the defendants may file summary judgment. If he's got facts that he doesn't have for a good reason, he must at that point file a request to delay summary judgment and that his failure to do so could waive that argument. Now, Haney filed a motion to compel, which was opposed. There was no order. Defendants then moved for summary judgment. Wait, wait, wait. What do you mean there was no order? I'm looking at ER 22, the order compelling further discovery, requiring production of documents and answers seen in derogatories, but denying sanctions. Was that not an order? I was explaining the procedural history leading up to the order. Yes, the procedural history was that he did get an order to compel, and it was that a motion to reconsider that wasn't ruled on. Isn't that right? Haney, before the motion to compel was granted, addressed and opposed summary judgment only on the merits. I'm sorry. I thought the motion to compel was granted, and then there was a motion to reconsider by the government. That's true, Your Honor. All right. So it was granted. The motion to compel was granted after Haney fully briefed and opposed summary judgment. When the motion to compel after summary judgment was fully briefed was then granted, the defendants moved for reconsideration and also moved to stay discovery, explicitly pointing out that Haney had fair notice of Rule 56F and declined to request a postponement of summary judgment, instead addressing it then on the merits. This seems like incredibly technical stuff to impose on a pro se litigant who is clearly working pretty hard to get his claims in front of the court. Even a lawyer faced with an order compelling discovery and an unruled-upon motion to reconsider might think that there was still an order compelling discovery that had to be followed by the opposing party. Up to that point, it's a fair address of the situation, except after defendants observed in moving to stay discovery because it had been fully briefed, summary judgment was fully briefed, in Haney's opposition at excerpts of record, page 151, he explicitly acknowledged, I did not move for a stay under Rule 56F. I want this case to move forward as quickly as possible and I'm opposing here a stay of discovery because I want this case to move forward. But moving forward, he meant discovery. That's what he wanted. I mean, he is saying, I mean, he's a lay person, right? And moving forward had to be understood in context as I want the answers to my interrogatories and I want my documents now. Your Honor, even if you don't believe that Haney... You read this record and think about this case, it's an outrage the way he was treated, an outrage. I mean, they just... He's trying... He was required to receive certain documents, certain help. He never got any of it. It's like, go away, don't bother me. That's the way the State treated him. And what you ought to do is see if you can't get the Attorney General's office to go to these prisons and make sure the people who are running them are respecting prisoners' rights. That's what we need. That's why we get all these cases. I appreciate that, Your Honor. And were this case to be remanded, Haney would get all the discovery he's seeking. But that is still not even necessary because the discovery he sought was responded to. As the defendants argued, his motion to compel didn't address why he needed that discovery. It didn't address what was wrong with the discovery. The discovery... Has he gotten everything that was originally ordered to be produced by the order on... I'm looking for a date... ER 22. No, he hasn't, Your Honor. Okay, well, that's what I was trying to find out. But the record is still undisputed that these correctional officers heard out Haney's complaints of a toothache. It was undisputed because he didn't have the information. The district court, in the motion to compel order, determined that these were relevant issues, requests, right? Yes, Your Honor. And they included things, for example, such as what is the policy with regard to requesting dental care, medical care,  and what isn't the policy, right? Well, that policy was also addressed as an interrogatory to Sergeant Nelson, which he provided a response to in great detail under the penalty of... But not the policy. And the point is that it's kind of non-responsive, in a way, to say, well, there weren't any disputed facts, but when there's an outstanding order compelling additional discovery that is either itself evidence of the material facts or is designed to lead to admissible evidence. So it just seems kind of backwards to say, well, it's undisputed on the record where the record is incomplete. Except there's nothing in the discovery that he seeks that would contradict his... We don't know that because it's not in the record. This is Mr. Haney's own personal testimony that when he advised Officer Saldana of his toothache, she said she'd go tell dental. She returned and asked very explicit follow-up questions about the condition of his tooth, and then she acknowledged that she would immediately advise dental staff. Counsel, he might lose on the merits, but so far he hasn't been allowed really to get to the merits. And it may be that after all this discovery is produced, he's still going to lose, even on summary judgment. But it just seems that it was cut off prematurely. I'm just speaking for myself when saying that, but the actions following that order are confusing. What did the dental staff record show when he finally went? The dental staff documentation in the record shows that Haney visited a dentist on July 29th. His tooth was non-restorable and he refused an extraction. The next entry is September 9th, when he saw Dr. Alexander, one week after he'd left administrative segregation. It's unexplained why he waited that week, but then it shows that, again, his tooth was non-restorable. The dentist gave him some Notrin and scheduled him to have his tooth pulled the next day. That's the entirety of the dental records here. But his records are that he requested, that he was told, his testimony is that he was told not only that he couldn't see the person that day, but he couldn't see them at all while they were in access. That's what he said. That's what he says in unsworn documentation appended to his verified complaint, Your Honor. There's no actual evidence of that beyond these documents. At 355, it's an administrative inmate grievance. I believe it was 366. It's a government claim form. Neither of those were under the penalty of perjury. He was deposed. He did provide a declaration in opposing summary judgment. Although it was not signed under the penalty of perjury, that declaration would not have disputed any fact or added any new fact to the record here. And even his verified complaint did not address that, did not make that allegation. Rather, he just said that he advised Saldana of his toothache. She returned, took detailed questions from him, which she testifies that she brought back to dental staff and that they declined to see him at that time. And Haney's own actions illustrate the lack of seriousness of his concerns. He, besides declining to have his tooth pulled, he could have taken pain medication. Yes, Tylenol. Have you ever had a serious toothache? Have you ever tried taking Tylenol for it? Do you know what good it does? Well, the record shows that he never requested any pain medication since before he talked to Saldana and Nelson. But apparently, what he could have been given, all he was offered was Tylenol. Or Advil or some pain medication. Right, okay. Have you ever tried to take Tylenol or Advil for a serious toothache? Well, Your Honor, that is actually what Dr. Alexander gave Haney on September 9th, many weeks after this instance. So a dentist thought that that was effective medication for Haney's condition while scheduling him for a tooth pulling the next day. There's prescription Tylenol and Advil where you can get a lot of it. But an ordinary dose is not going to do anything for you. He acknowledged that he could get multiple pills of these pain medications from the nurses on duty when they came through. And again, these defendants, Saldana and Sergeant Nelson, only spoke to Haney one day apiece. That's all that's in the record here. Yet Haney testifies that he talked to innumerable medical staff and other custody staff on a daily basis about his toothache. Here, Saldana and Nelson are only answerable for one day's response. And they testify that they advised dental staff of his condition. Is there a record of that? Does the dental staff have a record? There's no documentation besides their own sworn testimony. So we really don't know what they advised the dental staff of. Haney has no personal knowledge of it. No. But he does acknowledge that Saldana They don't have any record. You have the fleshing out of the fact that Haney acknowledges Saldana returned him and asked very specific questions about his tooth, and that Saldana testified she was instructed to ask him by a dental staff. And did that information get into the dental records, or the records of the dental staff? There's no documentation supporting both parties' testimony on that point, Your Honor. So it never got in. Besides both parties' sworn testimony that this happened, there's no documentation supporting it. Okay, there's nothing in the record that we can see. And if the Court has no further questions. Thank you. Thank you, Your Honor. You know, there's many times when dentists want to pull your tooth out because it's an easy way out, instead of going through and doing root canals and all the rest of it. Well, I understand, Your Honor. So if someone goes to a dentist and the dentist says, well, I think we ought to pull the tooth out, you don't want to hold that against that person because maybe they want to think about it, maybe they want to get more information. It's understandable to want to preserve your tooth, but Dr. Alexander's testimony that the Department of Corrections, if a tooth is found non-restorable, can only pull that tooth, and that's the only step we can do. Yeah, you can. It could be non-restorable, but there are ways to build a tooth on it that can be done quickly and efficiently. And those methods were not offered by the Department of Corrections, at least at that time. I've got one right here. Get it done in 20 minutes. Well, in answer to the Court's question also, I merely have had a root canal, and that's really the extent of my dental history besides a brief cavity. Well, that's good. I'm glad. Brush your teeth twice a day, floss, and see your dental hygienist. And just let's wait for the future and see what it holds in store for you. All right, Your Honor. Thank you. Very briefly, Your Honors, I'd like to address a couple of points made by counsel for the government. First, he stated that Haney's statements concerning Officer Saldana's statements to him, you won't see a dentist the entire time you're in ADSEG, were not under penalty of perjury. Not only were they appended to his verified complaint, but if you look at ER 358, when you file a government claim form, Haney was also obligated to sign these rights and responsibilities statement, which it says, it is against the law to file a complaint that you know to be false. If you make a complaint knowing it is false, you can be prosecuted on a misdemeanor. I would submit, Your Honors, that these statements were indeed made under penalty of perjury. Your Honors, in addition, evidence regarding Haney's tooth, pretty much every piece of evidence that the government pointed to is either directly conflicted by Haney's statements or could have been contradicted by the discovery he sought. He said Nelson only saw Haney once. Well, the undisputed evidence is that Haney filed two grievances with Nelson, and Nelson doesn't address those grievances in his declaration. He says the undisputed evidence is that Saldana went to dental staff, came back to Haney, and then went back to dental staff. That may be true, but we don't know what dental staff told Haney. I told Saldana, she testifies only that they told her they would not see Haney at that time. Then she goes back and says, they will not see you at all while you're in ADSEG. You're just going to have to wait. Don't bother asking again. She makes a gesture across her throat. That is the story as told by Haney. That is the story he sought to prove with his discovery, and that is the story that he never got the chance to prove because this Court entered summary judgment against him on an entirely incomplete record without giving him the chance to try to prove his claims, which is what this Court's precedent requires. Thank you. Thank you very much. And thank you for taking this case pro bono. The pro bono program is very helpful to the Court. We appreciate your efforts. Thank you. We come to number three, Newman v. Clorox.
judges: Pregerson, Graber, Berzon